UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **KENT N. BURFORD, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | ) Case no. 4:16CV00536 PLC |
| | ) |
| **MONSANTO CO., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion for remand (ECF No. 13). Defendants Monsanto Company, Solutia, Inc., and Pharmacia LLC (collectively, "Defendants") oppose the motion (ECF No. 18). The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

On March 10, 2016, twenty-eight individual plaintiffs ("Plaintiffs") filed a petition against Defendants in the Circuit Court of St. Louis County seeking damages under theories of strict product liability and negligence. Specifically, Plaintiffs claimed they developed cancer as a result of dietary and other environmental exposure to polychlorinated biphenyls (PCBs) manufactured by Defendants. Defendants removed the action to this Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

Plaintiffs moved to remand the matter to state court on the ground that this case does not satisfy the requirements for federal officer removal (ECF Nos. 13 and 14). Defendants filed a memorandum in opposition to remand and a motion for oral argument

(ECF Nos. 18 and 19), and Plaintiffs filed a reply memorandum (ECF No. 22). After hearing oral arguments on June 16, 2016, the Court took the matter under submission and Plaintiffs filed a notice of supplemental authority (ECF No. 24). For the following reasons, these proceedings are stayed.

## I.     *Factual and Procedural Background*

From 1935 until 1977, Pharmacia (then known as Monsanto) manufactured PCBs and sold them, under the trade name "Aroclor," to a variety of industrial customers. (ECF No. 9). Pharmacia sold the PCBs for use in "closed applications," or insulating fluids in high-temperature transformers and capacitors, and "open applications," such as inks, paints, pesticides, plasticizers, hydraulic fluids, lubricants, adhesives, heat transfer fluids, and carbonless copy paper. (ECF No. 1-1). In 1971, Pharmacia ceased production of PCBs for use in open-application systems, and in 1977, it ceased all production of PCBs. (ECF No. 9).

Plaintiffs filed a petition in state court asserting claims of strict product liability and negligence. (ECF No. 1-1). Plaintiffs alleged that their exposure to PCBs, which were manufactured by Defendants and ultimately released into the environment, caused them to develop cancer. (Id.). Plaintiffs specifically limited their claims to PCBs sold for use in open applications and stated that they "affirmatively disclaim any damages or cause of action for . . . any exposure to PCBs sold by defendants at the direction of any officer of the United States or any of its agencies or entities or any person acting at their direction." (Id. at ¶ 33).

Pharmacia, with the consent of Monsanto Co. and Solutia, Inc., removed the action asserting that this Court has jurisdiction under the federal officer removal statute, 28 U.S.C. §

1442(a)(1).[1] (ECF No. 1). In the notice of removal, Defendants claimed that they "acted under" color of federal office because they manufactured PCBs: (1) at the express direction and command of the federal government, pursuant to the Defense Production Act; (2) as a direct contractor for various governmental departments and agencies; (3) for federal defense contractors who required them to meet exacting military specifications; and (4) for uses required by federal OSHA regulations. (ECF No. 1 at 22-23). Additionally, Defendants asserted that Plaintiffs' claims are "for or relating to" Defendant's manufacture and sale of PCBs because the government procured the PCBs and regulated their production. (Id. at 28). Finally, Defendants alleged the following colorable federal defenses: (1) the government contractor defense; (2) express preemption by the Toxic Substances Control Act of 1976 (TSCA); and (3) implied preemption by the EPA's comprehensive regulation of PCBs. (Id. at 25-28).

On May 17, 2016, Plaintiffs filed a motion to remand the action to state court on the ground that this case does not satisfy the requirements for federal officer removal. (ECF No. 14). First, Plaintiffs assert that there is no causal connection between Defendants' actions and official authority. (Id.). In particular, Plaintiffs argue that their cause of action "attacks Monsanto's supply of PCBs used in *non-closed applications*, which was necessarily prior to the interval in which it says it was required to continue selling them for use in closed applications." (Id. at 5) (emphasis added). In regard to the federal defenses asserted by Defendants, Plaintiffs

---

[1] The federal officer removal statute permits a defendant to remove to federal court a state court action brought against the

> United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). See also Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 145 (2007).

contend that the government contractor defense is not available to Defendants because, among other reasons: (1) Defendants did not contract directly with the government, but rather with government contractors; and (2) to the extent that Defendants presented evidence of government contracts for PCBs, they cannot demonstrate that those PCBs were used in open applications. (ECF No. 14 at 3-7). Plaintiffs also maintain that the TSCA cannot apply retroactively to bar their claims and, even if it did, the TSCA's savings clause preserves their right to seek damages under common law theories. (Id. at 8-11).

Defendants filed a response in opposition to remand, arguing that they presented sufficient evidence to satisfy their burden of establishing that they "acted under color of federal office" because they demonstrated that: (1) they produced PCBs for direct sale to the federal government; and (2) the federal government exercised control over Defendants' production of PCBs for military use. (ECF No. 18 at 4-7). Additionally, Defendants refuted Plaintiffs' assertion that federal subcontractors cannot invoke the federal officer removal statute. (Id. at 9). Finally, Defendants contend that that their federal defenses – namely, the government contractor defense and preemption under the TSCA – are "more than colorable." (Id. at 16-19).

In their reply memorandum, Plaintiffs assert that the instant case does not implicate the "basic purpose" of the federal officer removal statute. (ECF No. 22 at 2). Plaintiffs further argue that the documents presented by Defendants do not show that Defendants were acting under color of federal office because the documents "overwhelmingly concern" PCBs sold either for closed-application uses or to government contractors rather than the government itself. (Id. at 3-4). Plaintiffs contend that, even if the court were to consider the PCBs sold to private companies which used those PCBs in products sold to the government, those sales "constitute only an infinitesimal, *de minimis* amount of overall sales." (Id. at 6-7, 10). Plaintiffs further

emphasize that the government did not require Defendants to produce PCBs and, anyway, those covered by OSHA regulations were produced for electrical, and therefore, closed-use purposes. (Id. at 10).

On June 16, 2016, the Court heard argument on Plaintiffs' motion for remand. At the opening of the proceedings, the Court noted that Defendants had appealed the Court's remand of a similar products liability action to the United States Court of Appeals for the Eighth Circuit. Bailey, et al., v. Monsanto Co., et. al., Case No. 4:15CV00844 AFG, 2016 WL 1258636 (E.D. Mo. Mar. 31, 2016.).[2] Plaintiffs' counsel acknowledged that "a plausible way to proceed" would be to stay the instant case pending the Eighth Circuit's decision in Bailey. However, he urged that this case "is even more appropriate for remand" than Bailey because, there, the plaintiffs did

---

[2] In Bailey, twelve plaintiffs alleged that they developed cancer as a result of exposure to PCBs that were manufactured by Defendants for use in open and closed applications and ultimately released into the environment. Id. at *14-15. The Bailey defendants (which included the three defendants in this case, as well as Pfizer, Inc.) removed the case to federal court pursuant to the federal officer removal statute. Id. at *5. The Court remanded it because the defendants demonstrated neither that they were acting under the directions of a federal officer nor that there was a causal connection between the challenged conduct and the alleged official authority. Id. at *14. In particular, the Court found the plaintiffs' so-called "*de minimis* argument" persuasive, reasoning that:

> [T]he amount of PCBs manufactured by Old Monsanto pursuant to direct contracts with the government, together with the amounts sold to federal contractors at the direction of the government, and even together with the amounts manufactured to meet the needs of defense contractors during the years of the Second World War, relative to the total amount of PCBs allegedly persisting in the environment and food chain, is simply too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiffs' claims.

Id. Examination of both the Court's electronic docket and that of the United States Court of Appeals for the Eighth Circuit reveals that Defendants have appealed the Court's remand order to the Eighth Circuit. See Fed. R. Evid 201; Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts may take judicial notice of judicial opinions and public records).

not limit their action to PCBs manufactured for open applications. After hearing arguments, the Court took the matter under submission.[3] (ECF No. 23).

## II. *Discussion*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). See also Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016). Importantly, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979). Factors relevant to a district court's determination of whether to stay proceedings include maintaining control of its docket, conserving judicial resources, and providing for the just determination of cases pending before it. Webb v. R. Rowland & Co., Inc., 800 F.2d 803, 808 (8th Cir. 1986).

The case at bar is nearly identical to Bailey. Both actions involve plaintiffs suffering from cancer allegedly caused by PCBs that Pharmacia manufactured. See Bailey, 2016 WL 1258636, at *1. In each case, the plaintiffs allege that Defendants are liable, under theories of strict liability and negligence, for manufacturing and selling PCBs, which "ultimately made their way to the environment and to the food chain" and were "a proximate and producing cause, and a substantial factor in the development" of the plaintiffs' cancers.[4] (ECF No. 1-1; Bailey v.

---

[3] Since the argument on Plaintiffs' motion for remand, the Court has remanded an almost identical case to state court for lack of federal officer jurisdiction. Kelly, et al., v. Monsanto Co., et al., Case No. 4:15CV01825 JMB, 2016 WL 3543050 (E.D. Mo. June 29, 2016).

[4] The only arguably significant difference between the two cases is that the Bailey plaintiffs broadly plead that they sustained injury as a result of Defendants' "various PCB products," while the Plaintiffs in this case attribute their injury to Defendants' "various PCB products *sold for open and non-controllable applications*[.]" (Id.) (emphasis added).

Monsanto, 4:15CV00844 AGF, ECF No. 1-1 filed May 28, 2015). Most importantly, Defendants removed each case pursuant to the federal officer removal statute, and the plaintiffs subsequently moved for remand on the ground that Defendants did not satisfy their burden under the statute.

In Bailey, the court remanded the case to state court because, among other reasons, it concluded that Defendants satisfied neither the "acting under" nor causal connection requirements of the federal officer removal statute. Bailey, 2016 WL 1258636, at *13-14. Defendants have appealed the court's decision in Bailey to the Eighth Circuit. See Bailey, et al., v. Monsanto Co., et al., No. 16-2096 (8th Cir. opened May 4, 2016) ("Appeal"). On appeal, Defendants assert that the district court erred in finding that: (1) "only the PCBs Pharmacia sold directly to the federal government or others at its express command were produced under color of federal office"; and (2) in order to satisfy the nexus requirements, Defendants must "prove a significant percentage of all products that may have caused harm were manufactured under color of federal office[.]" (Appeal, Appellants' brief, Entry No. 4417494).

The issues raised in the Bailey appeal and pending before the Eighth Circuit are also at issue here. In their motion for remand, Plaintiffs argue that Defendants: (1) did not act under the direction of a federal officer when they manufactured and sold PCBs to government contractors; and (2) even if this Court were to find that Defendants manufactured and sold PCBs under color of federal office, the PCBs that Defendants produced for government use were only a *de minimis* amount of the total PCBs it manufactured and, therefore, insufficient to satisfy the statute's requirement. If the Eighth Circuit affirms the Court's holding that the amount of PCBs manufactured directly and/or indirectly for the federal government "is simply too small to satisfy the [statutory] requirement," then this Court must remand this case to state court.

### *III.  Conclusion*

The Eighth Circuit Court of Appeals' decision in the pending appeal from the Court's decision in <u>Bailey</u> will likely have a significant effect on the ultimate disposition of the instant matter. The Court therefore finds that staying the motion for remand and the proceedings in this case would serve the interests of judicial economy. Accordingly, the Court stays the instant litigation pending resolution of that appeal. Accordingly,

**IT IS HEREBY ORDERED** that the motion for remand (ECF No. 13) and all proceedings in this matter are **STAYED** pending further order of this Court.

**IT IS FURTHER ORDERED** that, within eleven days of the Eighth Circuit's decision in the <u>Bailey</u> Appeal, the parties in this lawsuit file a copy of that decision.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of July, 2016.