UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENT N. BURFORD, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case no. 4:16CV536 |
| | ) |
| MONSANTO CO., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion for remand. (ECF No. 13). Defendants Monsanto Company, Solutia, Inc., and Pharmacia LLC (collectively, "Defendants") oppose the motion. (ECF No. 18). The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (ECF No. 15).

### I. *Factual and Procedural Background*

From 1935 until 1977, Pharmacia (then known as Monsanto) manufactured polychlorinated biphenyls (PCBs)[1] and sold them, under the trade name "Aroclor," to a variety of industrial customers. (ECF No. 9, ¶¶ 34, 50). Pharmacia sold the PCBs for use in "closed applications," or insulating fluids in high-temperature transformers and capacitors, and "open applications," such as inks, paints, pesticides, plasticizers, hydraulic fluids, lubricants, adhesives, heat transfer fluids, and carbonless copy paper. (ECF No. 7 at ¶ 41). In 1971, Pharmacia ceased production of PCBs for use in open-application systems, and in 1977, it ceased all production of PCBs. (ECF No. 9 at ¶¶ 34, 41).

---

[1] PCBs are a class of man-made organic compounds that are nonflammable and conduct heat without conducting electricity, and have been used in many different products, including electrical equipment, to prevent fires and explosions. Kelly, et al. v. Monsanto Company, et al., Case No. 4:15CV1825 JMB, 2016 WL 3543050 at *1 n.2 (E.D.Mo. June 29, 2016)

On March 10, 2016, twenty-eight individual plaintiffs ("Plaintiffs") filed a petition against Defendants in the Circuit Court of St. Louis County seeking damages under theories of strict product liability and negligence. (ECF No. 7). Plaintiffs alleged that their exposure to PCBs, which were manufactured by Pharmacia and ultimately released into the environment, caused them to develop non-Hodgkin lymphoma, malignant melanoma, and/or breast cancer. (Id. at ¶ 34). Plaintiffs specifically limited their claims to PCBs sold for use in open applications and stated that they "affirmatively disclaim any damages or cause of action for . . . any exposure to PCBs sold by defendants at the direction of any officer of the United States or any of its agencies or entities or any person acting at their direction." (Id. at ¶ 33).

Pharmacia, with the consent of Monsanto Co. and Solutia, Inc., removed the action asserting that this Court has jurisdiction under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. (ECF No. 1). In the notice of removal, Pharmacia claimed that it "acted under" color of federal office because it manufactured PCBs: (1) at the express direction and command of the federal government, pursuant to the Defense Production Act; (2) as a direct contractor for various governmental departments and agencies; (3) for federal defense contractors who required them to meet exacting military specifications; and (4) for uses required by federal OSHA regulations. (ECF No. 1 at ¶ 80). Additionally, Pharmacia asserted that Plaintiffs' claims are "for or relating to" Defendant's manufacture and sale of PCBs because the government procured the PCBs and regulated their production. (Id. at ¶ 100). Finally, Pharmacia alleged the following colorable federal defenses: (1) the government contractor defense; (2) express preemption by the Toxic Substances Control Act of 1976 (TSCA); and (3) implied preemption by the EPA's comprehensive regulation of PCBs. (Id. at ¶¶ 88, 96, 98).

On May 17, 2016, Plaintiffs filed a motion to remand the action to state court on the ground that this case does not satisfy the requirements for federal officer removal. (ECF No. 13). In their memorandum in support of the motion for remand, Plaintiffs argued that Pharmacia satisfied neither the "acting under" nor causal requirements for federal officer jurisdiction because Plaintiffs' cause of action "attacks Monsanto's supply of PCBs used in *non-closed applications*, which was necessarily prior to the interval in which it says it was required to continue selling them for use in closed applications." (ECF No. 14 at 5) (emphasis added). In regard to the federal defenses asserted by Pharmacia, Plaintiffs contended that the government contractor defense is not available to Pharmacia because, among other reasons: (1) Pharmacia did not contract directly with the government, but rather with government contractors; and (2) to the extent that Pharmacia presented evidence of government contracts for PCBs, it cannot demonstrate that those PCBs were used in open applications. (Id. at 3-7). Plaintiffs also maintained that the TSCA cannot apply retroactively to bar their claims and, even if it did, the TSCA's savings clause preserved their right to seek damages under common law theories. (Id. at 8-11).

Defendants filed a response in opposition to remand, arguing that they presented sufficient evidence to satisfy their burden of establishing that they "acted under color of federal office" because they demonstrated that: (1) Pharmacia produced PCBs for direct sale to the federal government; and (2) the federal government exercised control over Pharmacia's production of PCBs for military use. (ECF No. 18 at 4-7). Additionally, Defendants refuted Plaintiffs' assertion that federal subcontractors cannot invoke the federal officer removal statute. (Id. at 9). Finally, Defendants contended that their federal defenses – namely, the government

3

contractor defense and preemption under the TSCA – were "more than colorable."  (Id. at 16-19).

In their reply memorandum, Plaintiffs maintained that the instant case did not implicate the "basic purpose" of the federal officer removal statute.  (ECF No. 22 at 2).  Plaintiffs further argued that the evidence presented by Defendants did not demonstrate that Pharmacia was acting under color of federal office because the documents "overwhelmingly concern" PCBs sold either for closed-application uses or to government contractors rather than the government itself.  (Id. at 3-4).  Plaintiffs contended that, even if the court were to consider the PCBs sold to private companies which used those PCBs in products sold to the government, those sales "constitute only an infinitesimal, *de minimis* amount of overall sales."  (Id. at 6-7, 10).  Plaintiffs emphasized that the government did not require Pharmacia to produce PCBs and, anyway, those covered by OSHA regulations were produced for electrical, and therefore, closed-use purposes.  (Id. at 10).

On June 16, 2016, the Court held a hearing on Plaintiffs' motion for remand.  (ECF No. 23).  At the opening of the proceedings, the Court noted that Defendants had appealed Judge Fleissig's remand of a similar products liability action to the United States Court of Appeals for the Eighth Circuit.  Bailey, et al v. Monsanto Co.et al, Case No. 16-2096 (8th Cir., opened May 4, 2016) (appealing Case No. 4:15CV844 AGF, 176 F. Supp.3d 853 (E.D. Mo. 2016)).  Plaintiffs' counsel acknowledged that "a plausible way to proceed" would be to stay the instant case pending the Eighth Circuit's decision in Bailey.  However, he urged that this case "is even more appropriate for remand" than Bailey because, there, the plaintiffs did not limit their action to PCBs manufactured for open applications.

On July 18, 2016, the Court entered an order staying the instant matter pending the Eighth Circuit's decision in Bailey. (ECF No. 25). The Court reasoned that the two cases were nearly identical as they involved claims that Pharmacia produced and sold PCBs that caused the plaintiffs to develop cancer, Defendants removed both cases pursuant to the federal officer removal statute, and the plaintiffs filed motions to remand. (Id. at 6-7). The Court also noted that Judge Bodenhausen recently remanded an almost identical case to state court for lack of federal officer jurisdiction in Kelly, et al. v. Monsanto Company, et al., Case No. 4:15CV1825 JMB, 2016 WL 3543050 (E.D.Mo. June 29, 2016).[2]

Finding that the Eighth Circuit's decision in Bailey would "likely have a significant effect on the ultimate disposition of the instant matter," the Court stayed the proceedings pending resolution of that appeal. (Id. at 8). The Court also ordered the parties to file a copy of the Bailey decision within eleven days of its entry. (Id.). On March 27, 2017, Defendants filed a notice of outcome of the Bailey appeal informing the Court that the appeals in both Bailey and Kelly were "settled and dismissed." (ECF No. 26). As the Bailey appeal is no longer pending, the Court will lift its stay and consider Plaintiffs' motion to remand.

## II.  Discussion

Plaintiffs contend that removal under the federal officer removal statute was improper because: (1) Pharmacia was not a government contractor and was therefore not "acting under" a federal officer for purposes of the federal officer removal statute; (2) there was no causal connection between Pharmacia's actions and official authority; and (3) Defendants did not have a colorable federal defense. (ECF No. 14). Defendants counter that: (1) Pharmacia manufactured PCBs under color of federal office; (2) a causal connection exists because

---

[2] Defendants filed a notice appealing the remand on July 25, 2016. Kelly, et al. v. Monsanto Co., et al., Case No. 16-2096.

Plaintiffs claims are "for or relating to" acts under federal office; and (3) Pharmacia asserted three colorable federal defenses. (ECF No. 18).

The federal officer removal statute permits a defendant to remove to federal court a state court action brought against the

> United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). See also Watson v. Philip Morris Cos., 551 U.S. 142, 145 (2007). A defendant seeking federal officer removal must demonstrate that: (1) the defendant is a "person" within the meaning of the statute;[3] (2) the defendant "acted under" the direction of a federal officer; (3) there was a causal connection between the defendant's actions and the official authority; and (4) the defendant "has a colorable federal defense to the plaintiff's claims." Jacks v. Meridian Resource Co., LLC, 701 F.3d 1224, 1230 (8th Cir. 2012).

The purpose of the federal officer removal statute is "to avert various forms of state court prejudice against federal officers or those private persons acting as an assistant to a federal official in helping that official carry out federal law." Id. at 1231. While courts are to construe broadly Section 1442(a)(1) so that the statute's purpose is not "frustrated by a narrow, grudging interpretation," Arizona v. Manypenny, 451 U.S. 232, 242 (1981) (quotation omitted), the Supreme Court has established that "not all relationships between private entities or individuals and the federal government suffice to effect removal under the federal officer removal statute." Jacks, 701 F.3d at 1231 (citing Watson, 551 U.S. at 153).

---

[3] The parties do not dispute that Defendants are persons for purposes of the federal officer removal statute.

### A. *"Acting under" a federal officer*

In support of their motion to remand, Plaintiffs argue that Pharmacia was not a government contractor and therefore was not "acting under" a federal officer within the meaning of Section 1442(a)(1). (ECF No. 14 at 2). More specifically, Plaintiffs assert that the invoices Defendants submitted with their notice of removal do not satisfy the "acting under" requirement because: (1) many of the invoices are for other companies' products; and (2) there is no evidence that the invoices relate to PCBs purchased for open applications. Plaintiffs further contend that their "claims do not arise out of anything done by [D]efendants at the direction of a federal officer[.]"[4] (Id.).

In response, Defendants contend that Pharmacia acted under color of law when it produced PCBs for direct sale to the federal government. (ECF No. 18). Defendants counter Plaintiffs' assertion that many of the invoices submitted by Pharmacia were "irrelevant," arguing that: (1) Pharmacia produced all of the products referenced in the invoices, even those whose trade names were owned by other companies; and (2) "all sales of PCBs to the federal government – whether for open or closed applications are relevant, because Plaintiffs cannot determine whether they were exposed to PCBs used in open or closed applications." (Id. at 5).

"The words 'acting under' are broad, and . . . the statute must be 'liberally construed,'" but the term is not "limitless." Watson, 551 U.S. at 142 (citations omitted). See also Jacks, 701

---

[4] Additionally, Plaintiffs argue that, even if Pharmacia was "acting under" a government agency, Plaintiffs' claims do not arise from such actions because, in their complaint, they disclaimed "any claim arising from an act or omission . . . of any officer of the U.S. or any agency or person acting under him occurring under color of such office." (ECF No. 15 at 5-6) (quoting ECF No. 7 at ¶ 33). However, the Eighth Circuit has held that a defendant may remove under Section 1442(a)(1) even where a plaintiff has "expressly pleaded" that his claims "cover[] *only* conduct by the individual defendants that in fact was outside the scope of their federal employ." Brown v. Armstrong, 949 F.2d 1007, 1010 (8th Cir. 1991) (emphasis in original). See also Jefferson County, Ala. v. Acker, 527 U.S. 423, 431 (1999) ("[S]uits against federal officers may be removed despite the nonfederal cast of the complaint[.]").

7

F.3d at 1230. "[T]he fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail . . . does not bring[] that company within the scope of" the statute "and thereby permit[] removal." Id. at 145. Rather, "a private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152 (emphasis in original). "Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." Jacks, 701 F.3d at 1231 (quoting Watson, 551 U.S. at 153).

In Bailey and Kelly, the district court considered whether Defendants satisfied the "acting under" requirement for federal officer removal in claims arising from Pharmacia's production of PCBs. In both cases, the court found that Defendants met the "acting under" requirement for federal officer removal only as to the PCBs that Pharmacia sold directly to the government or to others at the government's direction. Bailey, 176 F. Supp.3d at 870; Kelly, 2016 WL at *9. The court explained: "Although the government required the use of PCBs in certain products during the relevant time period, and provided financial assistance to [Pharmacia] to manufacture them in the early 1940s, Defendants sold the PCBs, by and large, to government contractors and not to the government itself." Bailey, 176 F. Supp.3d at 870; Kelly, 2016 WL at *9.

Here, as in Bailey and Kelley, Defendants presented evidence of direct sales of PCBs to government agencies between the years 1966 and 1971.[5] However, Defendants demonstrated

---

[5] Pharmacia submitted with its notice of removal fifty-three invoices evidencing sales of PCB-containing products to government agencies between 1966 and 1971. (ECF No. 1-24). The parties dispute the significance of the invoices. Specifically, Plaintiffs assert that Pharmacia was not responsible for the manufacture of Inerteen, a Westinghouse produce, or Pyranol, a General Electric product, which together account for nineteen of the fifty-three invoices. (ECF Nos. 1-24, 13-4). Plaintiffs further alleged that Pydraul, a product sold pursuant to eight of the invoices "was sold in both PCB-containing and non-PCB-containing formulations." (Id. at 4). Finally,

8

neither that the government supervised or controlled the manufacturing process, nor that Pharmacia produced the PCBs to the government's detailed specifications, nor that the government compelled Pharmacia to produce PCBs under threat of criminal sanction. Cf. Isaacson v. Dow Chem. Co., 517 F.3d 129, 137-38 (2d Cir. 2008) (manufacturers of Agent Orange were entitled to federal officer removal in negligence and products liability cases because the companies directly contracted with the government for the production of Agent Orange and produced the chemical to the government's detailed specifications); Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398-99 (5th Cir. 1998) (same). The Court therefore concludes that Defendants failed to establish that they were "acting under" a federal officer. See, e.g., Bailey, 176 F. Supp.3d at 870; Kelly, 2016 WL at *9.

   B. *Causal connection between Pharmacia's actions and official authority*

In regard to the causal connection requirement for federal officer removal, Plaintiffs argue that their claims "simply have nothing to do with anything [Defendants] say [Pharmacia] did at the behest of the Government." (ECF No. 14 at 4). More specifically, Plaintiffs assert that "the federal government did not require [Pharmacia] to do anything with regard[] to PCBs" and, to the extent the government allegedly required Plaintiff to continue selling PCBs for use in closed electricity between the years 1971 and 1977, those PCBs were used in closed applications. In response, Defendants contend that they satisfied the causal connection requirement because Plaintiffs' claims relate to acts Defendants performed under color of federal office. (ECF No. 18 at 12-14).

To satisfy the statute's causal connection requirement, a defendant must show that the plaintiff's cause of action is "for or relating to any act under color of such [federal] office[.]" 28

---

Plaintiffs emphasize that Defendants do "not attempt to show, which if any, of the invoices relate to the claims at issue here – that is, PCB sales for open uses." (Id.).

9

U.S.C. 1442(a)(1). In other words, a defendant "must show a nexus, a 'causal connection between the charged conduct and asserted official authority.'" Jefferson County, Ala. v. Acker, 527 U.S. 423, 432 (1999) (quoting Willingham v. Morgan, 395 U.S. 402, 409 (1969)). As applied to non-governmental corporate defendants, "such entities must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." Isaacson, 517 F.3d at 137 (emphasis in original).

In Bailey, the plaintiffs argued that, where "the vast, overwhelming majority of [Pharmacia's] products were sold to private companies," a "vanishingly small number of PCB sales [] made to government purchasers" did not make the case removable on federal officer grounds.[6] Bailey, 176 F.Supp.3d at 863. More specifically, the evidence demonstrated that, "over the years, 1.2 billion pounds of PCBs were sold," but Defendants "provided evidence that only 47,000 pounds of PCBs were sold to the government[.]" Id. The court found the plaintiffs' argument persuasive and concluded that Defendants failed to meet the causal connection requirement for federal officer removal. Id. at 870.

In Kelly, as in this case, Plaintiffs limited their claims to PCBs sold for use in open applications and Defendants submitted additional invoices reflecting sales of PCBs to government agencies. Kelly, 2016 WL at *1, 5. In Kelly, the court calculated that the invoices showed that Pharmacia sold 5,538 pounds of PCBs to federal government agencies for use in open applications. Id. at *9. The court explained that, according to the record, "a total of 1.2 billion pounds of PCBs were sold" to the government but only "5,538 pounds of PCBs were sold for open applications," meaning that "government sales for open applications would account for less than one one-thousandth of one percent of overall sales of PCBs." Id.

---

[6] Plaintiffs characterized this argument as a *de minimis* argument and acknowledged that "due to the unique theory of liability in this case, they did not have case law supporting their position." Bailey, 176 F.Supp.3d at 863.

The Kelly court opined that the outcome would not change if the Court were to accept Defendants' claim "that this case[] involves six time the amount of PCBs [as the Bailey case], in other words 282,000 pounds, this would mean approximately .024 percent of all of [Pharmacia's] PCB sales were made to the government." Id. at *9 n.15. The court held that, even accepting Defendants' calculations, "the amount of sales of PCBs manufactured by [Pharmacia] for open uses pursuant to contracts with the government and sold to federal contractors at the direction of the government relative to the amount of PCBs allegedly persisting in the environment and food chain is too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiffs' claims." Id. at *9. See also Bailey, 176 F. Supp.3d at 870.

Defendants urge the Court to reject the *de minimis* theory applied in Bailey and Kelly and find that Defendants satisfied the causal connection requirement for federal officer removal. (ECF No. 18 at 14). Defendants also argue that the Court should consider all fifty-three of the invoices evidencing sales of PCBs to government agencies and not exclude the PCBs Pharmacia sold as a subcontractor. (Id.). Even if the Court assumed that all of the sales represented by Defendants' invoices involved Pharmacia's PCBs *and* that all of those PCBs were used in open applications, the percentage of PCBs produced "because of what they were asked to do by the Government" is too small to satisfy the causal connection requirement.[7] Isaacson, 517 F.3d at 137. The Court therefore holds that Defendants did not establish the requisite causal connection.

### III.  Conclusion

The Court concludes that Defendants failed to meet their burden of showing that removal of this proper. Accordingly,

---

[7] Because Defendants satisfied neither the "acting under" nor causal connection requirements for federal officer removal, the Court need not consider whether Defendants asserted a colorable federal defense to Plaintiffs' claims. See, e.g., Bailey, 176 F.Supp.3d at 870.

**IT IS HEREBY ORDERED** that Plaintiffs' motion for remand (ECF No. 13) is **GRANTED.**

/s/ Patricia L. Cohen
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of April, 2017